Hall *vs.* Carey.

No. 25.—HENRY T. HALL, *et al.* plaintiffs in error, *vs.* EDWARD CAREY, assignee, defendant.

[1.] An exception to a declaration taken by way of demurrer at the *trial term* of the Court, which would not be good in *arrest of judgment*, will be overruled under the provisions of the 14th Common Law rule of practice.

[2.] The Act of 1840 which provides for the appointment of a receiver to take charge of the assets of the Banks where the charters thereof may be declared forfeited by judicial proceedings, and the several Acts amendatory thereof, do not impair the rights of the debtors to the Bank. The Statute being *remedial* in its character, is not unconstitutional.

[3.] The books of a corporation are admissible in evidence for the purpose of showing the regularity and legality of the proceedings of the corporation; but not to establish a right in its favor against third persons.

[4.] Persons acting publicly as the officers of a corporation, will be presumed rightfully in office, so far as it regards third persons; and their official acts will be binding on the corporation to the extent of the rights of such third persons.

[5.] In a suit upon a negotiable note, the defendant will not be permitted to raise the question of title, unless it is made to appear that it is necessary for the purpose of his defence.

Assumpsit, tried before Judge ALEXANDER, in Muscogee Superior Court, May Term, 1848.

This action was brought by the defendant in error, *vs.* assignee of the Bank of Columbus, for the use of Seaborn Jones, against the plaintiff in error, upon their promissory notes, amounting together to over $17,000 principal. These notes were made payable " *to the order of A. B. Davis, Cashier.*" The declaration alleged that they were made and delivered to Davis, and then proceeds to describe them, and alleges that it was meant and intended to make them, (by the expression " *A. B. Davis, Cashier,*") payable to the Bank of Columbus. It also alleges that the Bank assigned said notes to plaintiff. The defendant pleaded several pleas. The defendant on the trial demurred to the plaintiff's declaration, on the ground that the property in said notes did not appear by the pleadings ever to have been in the Bank of Columbus. The demurrer was overruled, and defendants excepted.

The plaintiff then demurred to the second and third pleas of the defendants. The second plea alleged that the Bank never did assign said notes to plaintiff. The third plea alleged that the Bank had been dissolved by the judgment of the proper Court,

and at the time it was dissolved, it owed the notes sued on. The Court below sustained the demurrer to the pleas, and they were stricken, and the defendants excepted.

The first plea was the general issue, and the fifth was that the assignment was made to defeat the operation of forfeiture. Issue was taken on these last.

The plaintiff then offered in evidence the notes described, without an assignment; the defendants objected. The Court allowed them to be read, and defendants excepted.

The plaintiff proved a manuscript book to be the minutes of the Bank, and offered to read some portion thereof, in evidence, to-wit, a recital therein that the Board, on June 10th, 1843, met; present, P. T. Schley, Pres.; L. J. Davis, H. Holt, and A. B. Davis; and that it was resolved by said Board that the Bank make an assignment of all its property, and that the President and Arthur B. Davis be instructed to execute it, which deed to be executed was copied on the minute book, and the copy so entered was also offered in evidence. The defendants objected, and the Court permitted the same to be read, and defendants excepted. The plaintiff proved, that when the resolution to make the deed was adopted, Schley was acting as President, and A. B. Davis as Cashier, and that none but four directors were present, including A. B. Davis, Cashier. Plaintiff proved the loss of the deed of assignment, and offered to read a copy thereof, from the record book of said Superior Court. The defendants objected. The Court permitted it to be read, and defendants excepted.

The plaintiff proved that the deed was executed as the copy purported, and also that the Bank owned the notes when the deed was made. The defendants then proved by Schley that he never purchased any shares in said Bank; that A. B. Davis, or one Smith, transferred to him thirty shares to make him eligible as director, that he never paid for them, and did not know whether he ever had a certificate therefor, and if so, what he did with it. The defendants then read in evidence the judgment of the Superior Court of Muscogee county, dissolving said Bank, dated June 13th, 1843. The deed of assignment to plaintiff, also the resolution of the Bank on its minutes, directing an assignment, were dated June 10th, 1843.

The defendants contended that said deed of assignment was

void. The Court charged the jury that its validity could not be inquired into, and the defendants excepted.

Upon which exceptions the following assignment of errors was made :

1. Overruling the demurrer to plaintiff's declaration.

2. Sustaining demurrer to 2d and 3d pleas.

3. Permitting the notes to be read without an assignment.

4. Permitting a portion of the minutes of the Bank to be read.

5. Permitting the copy deed of assignment to be read in evidence.

6. In charging that the validity of said deed could not be impeached.

JOHN SCHLEY and JOHNSON & WILLIAMS, for plaintiffs in error.

DOUGHERTY, and JONES, BENNING & JONES, for defendant.

*By the Court.*—WARNER, J., delivering the opinion.

[1.] The first ground of error assigned to the decision of the Court below, is the overruling the demurrer to the plaintiff's declaration.

This objection to the declaration was taken at the trial term, and if good at any time, certainly was not good *in arrest of judgment.* It is contended, that the plaintiff should have alleged, the note was made payable to the Bank of Columbus, and given a correct description of it, inasmuch as Davis, the Cashier, was only the *agent* of the Bank. By the 14th Common Law rule of practice, all matters appearing on the face of the declaration, or process, that would not be good *in arrest of judgment,* shall be taken advantage of at the first term of the Court. *Hotchkiss,* 948. In any event, the declaration would have been *amendable,* and the objection would not have been good, in arrest of judgment, and was properly overruled by the Court, at the trial term.

[2.] The general ground of error taken, is to the decision of the Court below, in sustaining the demurrer to the defendants' second, and third pleas. The position assumed by the plaintiffs in error is, that by the Common Law, on the dissolution of a corporation, all the debts due to, and from the corporation, are extinguished ; and that when the notes sued on were executed to the bank, the makers contracted, with reference to this contingency,

and that the Acts of the Legislature of 1840, which provided against that contingency, by requiring the assets of the Bank to be placed in the hands of a receiver, for the benefit of the creditors thereof, as well as the Acts of 1841, 1842 and 1843, being amendatory of the Act of 1840, upon that subject, necessarily *impair the obligation of that contract*, and are therefore unconstitutional and void. In this State, on the dissolution of a corporation, without any special provision by Statute, all the personal estate of the corporation vests in the people, as succeeding to the rights of the crown at Common Law. Whether in equity the debtors to the corporation would be held as *trustees*, for the benefit of its creditors, it is not necessary now to decide. The people of the State, in whom the personal property of the Bank would have vested. have, in their sovereign capacity, by a legislative enactment, provided against such a contingency, and afforded a remedy, by declaring that the assets of the Bank shall be placed in the hands of a receiver, for the benefit of the creditors of the bank. The legal presumption is, that the makers of the notes received from the Bank a *valid consideration* therefor. But it is said, the makers of the notes contracted with the Bank with a direct reference to this contingency, of the dissolution of the corporation, and it constituted an important element in the consideration of the notes. It is *possible* the contract may have been made with the Bank in view of this contingency, that the Bank would lose all remedy by which it could enforce a collection of the notes in the event of a dissolution of the corporation, against the makers; but they must also be understood to have contracted, in view of the right of the people, in whom the assets of the Bank would have vested, on a dissolution of the corporation, by a legislative enactment, to provide a *remedy* against such a contingency, and to provide a *remedy* for the creditors of the corporation. The several Acts of the Legislature are *remedial* in their character, and impair no *right* vested in the plaintiffs in error, under their contract. They are not deprived of any ground of defence which they would have had against the Bank. The Act of 1843, however, expressly recognises and declares, that the assignment was made by the Bank, of all its real and personal debts and effects, to Carey, the assignee, *prior* to the judgment of forfeiture, and the plea of the defendants negatives this legislative declaration, which we think the Court below was bound to notice, as the law

Hall *vs.* Carey.

of the land, being a public Statute, and therefore properly sustained the demurrer to the defendant's pleas.

In regard to the third assignment of error, perhaps it would have been more regular to have tendered the deed of assignment, with the notes, to the jury; but as the assignment was subsequently proved, the plaintiffs' title was made out by different links, in his chain of testimony, and the Court did not err in permitting him to do so. The next error assigned upon the record, is the admission of the Bank books in evidence on the part of the plaintiff.

[3.] The books were offered in evidence for the purpose of proving that the assignment was duly made by the officers of the Bank. Although it is true, that the books of a corporation cannot be received, to establish a right in the corporation, as against third persons; yet, they may be used for the purpose of shewing the *regularity* and *legality* of corporate proceedings. *Angel & Ames on Corporations*, 533–4. The assignment by the Bank to the assignee, of its assets, created no *new right:* it merely transferred what rights it had. Such transfer of the defendants' notes, placed them in no worse condition, so far as regards the merits of their defence, than if the suit had been brought against them, by the Bank, instead of the assignee. The books of the Bank, we think, were admissible, to shew that the assignment of the assets was regularly and legally made to the assignee. By the Act incorporating the Bank of Columbus, it is provided— "No less than four directors shall constitute a Board, for the transaction of business, of whom the President shall always be one, except in case of sickness, &c." *Prince,* 85. It is insisted by the plaintiffs in error, that notwithstanding there were four directors present, at the time the assignment was made, that one of them being the Cashier of the Bank, he could not act in the capacity of director and Cashier at the same time—and that one of the directors (Schley) stated, that he never purchased any shares in the stock of the Bank; that thirty shares were transferred to him by Smith and Davis, to make him eligible as a director, and did not know what he had done with the certificate. The position assumed is, that under the state of facts disclosed, the directors were not authorised, under the charter, to make the assignment.

[4.] Persons acting publicly as officers of a corporation, are to be presumed rightfully in office, so far as it regards *third persons,*

and their official acts will be binding on the corporation, to the extent of the rights of such third persons. *Angel & Ames*, 81, 82. An officer, *de facto,* is one coming into office, by *colour* of election, and all his acts are good, until he is removed; at least so far as they concern the public, or the rights of third persons, who have an interest in the act done. *The people vs. Collins, 7th John. Rep.* 549.

[5.] It does not appear on the face of this record, that it is necessary for the defence of the defendants, that the question of the plaintiff's title to the notes, should be inquired into ; and we held in *Field vs. Thornton*, 1 *Kelly*, 306, that the question of title in negotiable paper, is one which a defendant will not be permitted to raise, unless it is made to appear, that is necessary for the purposes of his defence. The record exhibits the fact, that the notes were given by the defendants, for money advanced by the Bank, to them, to purchase cotton.

It is unnecessary to consider the exception to the admissibility of the copy-deed of assignment in evidence, as the record shews, that afterwards, the plaintiff introduced the original deed in evidence, after having duly proved its execution, on the day it bore date, and that the assignee took the control of the assets of the Bank. The deed of assignment is dated on the 10th of June, 1843, and the judgment of forfeiture was rendered against the Bank on the 13th day of the same month.

The Court charged the jury that the validity of the deed of assignment could not be inquired into, to which the defendants excepted.

The charge of the Court must be understood, in reference to the facts before it. The defendants were indebted to the Bank, for money advanced to them, for which these notes were given. The record does not show it was necessary for *their defence*, that they should inquire into the validity of the plaintiff's title, as was ruled in *Field vs. Thornton*, and in that view of the case, the Court did not err, in charging jury, that the validity of the assignment could not be inquired into *by the defendants*. The whole record exhibits an effort, on the part of the defendants, to get clear of an honest debt, by the *misfortunes* of their creditors, rather than the *justice* of their defence.

Let the judgment of the Court below be affirmed.