No. 12.—Isaac E. Bower, plaintiff in error, *vs.* James B. Smith, defendant.

[1.] To authorize a recovery upon shop books, where the entries are made in the hand-writing of the party, the plaintiff, among other things, must prove by his customers, that he kept correct books. And it is no compliance with the rule, for the witnesses to state, that they considered their accounts reasonable—admitting, at the same time, that they had never examined the items, and could not say that the services charged were actually rendered.

[2.] Before the books of the party can be admitted in evidence, they are to be submitted to the inspection of the Court; and if they do not appear to be a register of the daily business of the party, and to have been honestly and fairly kept, they are to be excluded. Explanatory evidence may be offered; and if the objections are *prima facie* accounted for, the books should be submitted to the Jury—letting the objections go, under the charge of the Court, to their *credit*, rather than to their *competency*.

[3.] Books, *per se*, are not sufficient to charge the defendant with the debts and accounts of third persons.

Assumpsit, &c. in Randolph Superior Court. Tried before Judge Warren, October Term, 1849.

This was an action on an account of a physician, James B. Smith, against Isaac E. Bower, to which were filed pleas of the

general issue, and that the plaintiff was not a licensed physician, as required by the Statute.

On the trial, plaintiff offered in evidence his books—proved, by his own oath, that these were his books of original entries; by two witnesses, that the charges in the account were the usual charges made by physicians; by one witness, that he had compared the items in the account with the books, and found that they corresponded, except one item, to-wit: an account of one Austin, charged to defendant; also, by two witnesses, that plaintiff had attended their families, and they considered his bills rendered reasonable, but they had not examined the items, and could not say that he had performed the service charged therein. On inspection of the books, it appeared that one item, against the defendant, was entered by interlineation, in a different ink and appearance from the remaining items, charged at the same date; and it further appeared, that, on several of the days wherein defendant was charged with attention "per day," the books contained items of charge against other persons the same day, for mileage—often for twelve miles—and, in some instances, such charges against two or three different persons the same day.

Defendant objected to the books, on the ground that the preliminary proof was not sufficient to authorize their introduction, with these suspicious circumstances unexplained. The Court admitted the books, and defendant excepted.

Proof was offered by the defendant, to show that the plaintiff made extravagant and incorrect charges, and also the certificate of the Secretary of the Board of Physicians of Georgia, that Dr. Smith was not licensed to practise, as required by the Act of 1839. There was no evidence to show that Dr. Smith was within the proviso to that Act, in favor of physicians practising before its passage.

The bill of exceptions stated, that "the Jury dispersed for the night," before being charged by the Court, but did not state whether it was with or without the consent of the parties.

The Court charged, "that it was not necessary that plaintiff should have a license from the Board of Physicians, provided he was practising as a physician between the years 1834 and 1839;" to which charge, defendant excepted.

The Court farther charged, "that, to authorize a recovery, plaintiff must have proven that he kept no clerk—that the books

were his books of original entries—that he kept correct books, by *aliunde* evidence—that there had been dealings between the parties—that the entries in the books corresponded with the items in the account sued on—and that the books must be supported by the supplemental oath of the party."

The Jury returned a verdict for the full amount of the account; whereupon, defendant moved for a new trial—among other grounds—

1st. Because the verdict was contrary to the charge of the Court, as to the books of plaintiff.

2d. Because the Court erred in admitting the books.

3d. Because there were items in the account for one Arthur and one Austin, and no proof made that the defendant had assumed to pay for their accounts.

4th. Because the Court erred in its charge, as to the license of the plaintiff.

5th.   Because the Jury dispersed.

The Court overruled the motion, and defendant excepted.

H. HOLT, for plaintiff in error.

W. TAYLOR, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

As all the questions made during the progress of the trial, came under review on the motion for a new trial, we shall direct our attention exclusively to that.

[1.] It is complained that the verdict of the Jury was .contrary to the charge of the Court.   If this be so, and the law of the case was properly submitted, a new trial should have been awarded.   What was the charge ?   That, in order to authorize a verdict for the plaintiff, upon his medical account, he must prove that he was in the habit of keeping correct books, by persons who had dealings with him.   We believe the rule of law to be correctly stated; and upon examining the record, we are satisfied that the proof did not come up to it.   Brooks and Beall, the only witnesses offered for that purpose, testified that Dr. Smith attended their families, and they considered the bills rendered by him reasonable; but they both state, they had not examined

Bower *vs.* Smith.

their accounts, and could not say that he had performed the several items of service for which he had charged them. This evidence is no compliance with the rule. The accounts rendered against the witnesses may have been reasonable in the aggregate; but that is not the point. Were they just? Were they correct in their items? This is the *aliunde* testimony which gives faith and credit to books.

[2.] It is insisted that a new trial should have been granted, because the Court erred in permitting the books to be offered in evidence—it appearing, from their inspection, that an interlineation had been made in them, in different ink from the items charged at the same date; and further, that the books contained evidence upon their face, that several items charged against the defendant were unjust; namely, the item of *attendance per day*—the books showing that on the same days, the plaintiff charged mileage to other persons, residing at a distance, in some instances, of twelve miles from the defendant.

All the Courts concur, that before the books of the party can be admitted in evidence, that they are to be submitted to the inspection of the Court; and, if they do not appear to be a register of the daily business of the party, and to have been honestly and fairly kept, they are to be excluded.

Now, the difficulty is, in determining what fraudulent appearances, upon the face of the books, will authorize a Court to withhold them from the Jury. When it is recollected that a large portion of our blacksmiths, mechanics, and laboring men, who keep books, have never been taught this art, and many of them are entirely uneducated, it would not do to prescribe a rule, so stringent as to operate, in many cases, to the exclusion of the only evidence upon which they could secure the value of their labor. And it would seem to me, that the irregularities in the books should be exceedingly gross and palpable, to justify the Court in arresting the evidence, from that tribunal whose peculiar province it is, to judge of the credibility of testimony.

I concede that the books might, upon their face, appear to have been so unfairly and dishonestly kept, as to authorize the Court to lay its hands upon them, and refuse their admission, at least until evidence was offered, explanatory of these discrediting circumstances. Suppose, for instance, the account on the books was entered, settled or satisfied in full. Surely, the books, *per se*,

would be no evidence of indebtedness, but of the contrary; and yet, the plaintiff might be abundantly prepared to prove that this entry was made there by mistake. Should he not be permitted to do so, and thus restore the books to *competency;* and so transfer the issue from one of *law,* to the *Court,* to one of *fact,* for the Jury? This, it occurs to me, would be the better practise, especially as it would be both the privilege and the duty of the Court, to call the attention of the Jury to these false and fraudulent appearances, in its summing up in conclusion. We are inclined to hold, therefore, that the Court did not err in suffering these books to go to the Jury.

[3.] We are clear that the verdict was not authorized by the evidence, so far as it charged the defendant with the accounts of Austin and Arthur. The books were insufficient, of themselves, to make him liable for the debts of third persons; and there was no other proof tendered.

[4.] We are equally clear, in holding that it was error in the Court, to charge the Jury that it was not necessary for the plaintiff to show a license, provided he was a practising physician between the years 1834 and 1839—there being no evidence, so far as the record shows, to support such a charge.

Upon these grounds, therefore, a new trial is awarded.

We find it unnecessary to express any opinion as to the alleged misconduct of the Jury, in dispersing before they rendered their verdict. The record does not show but that the Jury separated by the consent of the plaintiff in error, which, if given, as we are bound to presume it was, would have cured the irregularity, even if it be such a one as would otherwise have vitiated the verdict.

Judgment reversed.