| 64  | 243 |
| 88  | 317 |
| 64  | 243 |
| 107 | 851 |

---

## BRACKEN & ELLSWORTH *vs.* DILLON & SONS.

1. Before the books of a merchant or other tradesman can be used to prove an account, it must appear that he has no higher evidence of its truth, and therefore that he had no clerk who sold the goods, or that the clerk, if he had one, is dead, beyond the jurisdiction, or otherwise inaccessible. If he had no clerk who sold the goods, or the clerk is inaccessible, then before he can introduce his books the book-keeper, if accessible, must be produced to prove that it is the book of original entries; if he had none, or he is inaccessible, then he may prove that it is the book of original entries himself. Books are secondary evidence, and only admissible *ex necessitate rei.*

2. The books will not establish considerable items for cash, nor accounts of third persons transferred to defendants; nor are they admissible at all to show the authority to make such transfer. They may be admitted to show that a transfer was made pursuant to previous authority.

3. In a suit against a firm, in order to bind an incoming partner with the debts and liabilities of a private person or former firm, to which the defendants succeeded in the same business, plaintiffs must show some agreement on the part of the incoming partner, upon sufficient consideration, to assume such liabilities and pay such debts, before he can be bound, through the new firm, to pay the old indebtedness.

4. Ought the agreement to be in writing as a promise to pay the debt of a third person, *quære?*

5. Where the transfer is made by authority of the old debtor, it must clearly appear that knowledge thereof was brought home to the incoming partner, and that he acquiesced in it, before he can be bound thereby.

6. Over-payments may be recovered in a suit on an account, but before such recovery can be had, the over-payments must be specified and pleaded as a set-off, and with like particularity.

7. The court is always at liberty to open the case for new evidence before argument is closed; and unless abused, the discretion exercised will not be interfered with.

Evidence.    Partnership.    Contracts.    Set-off.    Practice in the Superior Court.    Before Judge Mershon.    Glynn Superior Court.    May Term, 1879.

The following, taken in connection with the opinion, sufficiently reports this case :

Dillon & Sons, who were merchants, brought complaint on an open account against Bracken & Ellsworth, partners in a saw mill.    The account embraced a variety of items; among others payments of drafts and accounts, and for cash, and also the following :

"Sept. 30, 1871  Amt. P. J. Bracken account transferred  . . $1,371.81.
  "          "      Bracken & Haslam,       do      . . .    283.34.
  "          "      P. J. Bracken,           do      . . .    122.05."

Defendants pleaded the general issue, and also that they had made various payments to plaintiffs, which were not specifically described because they were made by drafts not now in the possession or control of the defendants ; but they alleged that in all plaintiffs were over-paid, and they prayed judgment for whatever such excess might be.

On the trial, one of plaintiffs swore that the transfer of accounts stated above was authorized by Bracken, and known and assented to by Ellsworth.    They swore to the contrary.    Dillon, the senior partner of plaintiffs' firm, was the principal witness in their behalf.    Among other things, he stated that plaintiffs had had two clerks, one of whom he had heard was dead, and the other was in Wayne county ; also that they had two book-keepers in addition to plaintiffs

Bracken & Ellsworth *vs.* Dillon & Sons.

themselves.   One of these was shown to be dead; the other was a witness in the case.   It also appeared that Bracken & Ellsworth succeeded P. J. Bracken in business, who had succeeded Bracken & Haslam.

The jury found for plaintiffs $877.22 with interest.   Defendants moved for a new trial on the following, among other grounds:

1.  Because the court erred in admitting in evidence, over the objections of defendants' counsel, the books of the plaintiffs to prove the account, when the evidence showed that they were not the books of original entries, and that he had two clerks at the time said account was made, neither of whom was shown to be dead, beyond the jurisdiction of the court or otherwise inaccessible to the diligence of the plaintiffs.   [The evidence showed that the clerks entered their sales in blotters at the time of making them; these blotters were then handed to the book keeper, and from them he made up the books.]

2.  Because the court erred in charging the jury as follows: " It is a suit upon an open account brought by Dillon & Sons against Bracken & Ellsworth, and in order to prove the account sued upon, the plaintiffs have introduced their books as proof.   As proof they are legally to be admitted.   The books that have been admitted in this case are introduced as books of original entries under the law.   In the absence of better proof, they are to be considered by you.   As to whether they are the books of original entries or not you have nothing to do with that question.   That is a question for the court, and the court has decided they are.   If they are not, it is the court's error and you are not responsible for it."

3.  Because, after charging the following request, to wit: " Should you find from the plaintiffs' account that debts of third persons, to-wit: P. J. Bracken, Bracken & Haslam, and others, have been charged to the defendants by the plaintiffs, then before they could be made liable to pay said accounts or debts it must appear that the defendants

undertook and promised, in writing, to pay said accounts, [or if not in writing they must have promised to pay said accounts] upon some valuable consideration flowing from the plaintiffs to Bracken & Ellsworth, the defendants in this case," the court added the following qualification: "In connection with the sixth request to charge by the defendants' counsel, which I gave a moment ago, I charge this further—that if you find from the evidence in this case that Bracken & Ellsworth became the successors of P. J. Bracken in a subsisting business, and as a consequence of that change that Dillon & Sons, with whom they were dealing, were authorized to transfer the account of P. J. Bracken to the account of the successors, Bracken & Ellsworth, that the presumption would be that it was for a valuable consideration." (The words in brackets appear in the bill of exceptions, but not in the motion as set out in the record.)

4. Because the court erred in charging the jury the following request of plaintiffs' counsel: "Counsel request the court to charge the jury that the plea of set-off by the defendants cannot be considered by them, for the reason that the same is so loosely drawn that no recovery can be had thereon—§3465 of the Code: 'Every plea of set-off must set out the demand as plainly as if sued on.'"

5. Because the court erred in charging the jury as requested by plaintiffs' counsel as follows: "That where a new partner comes into a business, and said business continues, and is conducted without change as to the character of the business, and a balance was due by the old firm, it is competent for the new firm to assume the balance of indebtedness of the old firm, and such assumption, and the indebtedness of the old firm may be proved by testimony, and in some cases may even be implied from the transaction. If the evidence in this case discloses that Bracken & Haslam conducted a steam saw mill business on the Macon & Brunswick railroad; that P. J. Bracken continued the same business; that Bracken & Ellsworth became the suc-

cessors to the same business; that all these parties had dealings with Dillon & Sons; that Bracken & Ellsworth assumed sums due Dillon & Sons by Bracken & Haslam and P. J. Bracken, and authorized the transfer of said amounts to the account of Dillon & Sons against Bracken & Ellsworth, they are bound by it. As to such sums as Dillon & Sons are entitled to recover, you may look to all the circumstances surrounding the transaction for the purpose of determining the matter of said alleged transfer."

6. Because the court erred in the following practice: After counsel in said cause upon both sides had announced closed, the defendants introducing no testimony, C. Symmes, Esq., leading counsel for defendants, opened the argument, and during its progress insisted that the court should charge the jury that certain payments of money in the account by drafts and notes could not be proven by parol or the books, that the drafts and notes were themselves the highest evidence; upon which counsel for plaintiffs stated to the court that secondary evidence had been admitted (without objection) of the payment of these items; that the drafts and notes were in the court-house, and would have been introduced by counsel for plaintiffs if such objection had been made. Counsel for defendants insisted that they had made such objection; whereupon, under the misunderstanding aforesaid, counsel for plaintiffs moved to re-open the cause for the purpose of introducing said drafts and notes as evidence, which motion the court sustained, upon the ground that the justice of the cause required it.

The motion was overruled, and defendants excepted.

S. W. HITCH; SYMMES & ATKINSON; IRA E. SMITH, for plaintiffs in error.

GOODYEAR & HARRIS, for defendants.

JACKSON, Justice.

This suit was brought on an open account by the plaintiffs against the defendants as partners. These partners were

successors to Bracken, one of those now sued, and Bracken was successor to Bracken & Haslam.  On the account sued on were items transferred from Bracken's account when alone and from Bracken & Haslam's account.  Under the rulings and charge of .the court, the jury found some eight or nine hundred dollars with interest for several years against the defendants, Bracken & Ellsworth, successors as aforesaid, and they moved for a new trial, which the court refused, and this refusal, on many grounds taken in the motion, is the error assigned.

1. It is claimed that the books were improperly admitted on behalf of the plaintiffs to prove anything at all.   There were two clerks, alive and not inaccessible so far as was shown. in the proof, who were the salesmen of the goods sold and delivered.   Besides, there appears to have been two book-keepers, one of whom was dead, but the other accessi-, ble, being the son of the plaintiff who was sworn in the case.   The question is whether these books of goods so sold, and the books so kept, were admissible in evidence, even to prove the account for the groceries and provisions sold by the plaintiffs in the line of their ordinary business.

Our law on this subject is plainly and fully presented in the Code—section 3777—and is as follows:

" The books of account of any merchant, shop-keeper, physician, blacksmith, or other person doing a regular business and keeping daily entries thereof, may be admitted in evidence as proof of such accounts, upon the following conditions:

"1. That he kept no clerk, or else the clerk is dead, or otherwise inaccessible.

"2. Upon proof (the party's oath being sufficient) that the book tendered is his book of original entries.

"3. Upon proof (by his customers) that he usually kept correct books.

"4. Upon inspection by the court to see if the books are free from any suspicion of fraud."

This codification of the Georgia law upon this subject embodies the substance of the adjudications of this court from 1*st Kelly* to this day. 1 *Kelly*, 233 ; 5 *Ga.*, 239 ; 8 *Ib.*, 74 ; 13 *Ib.*, 496, 508 ; 17 *Ib.*, 65 ; 18 *Ib.*, 318, 457,

698 ; 20 *Ib.*, 365 ; 21 *Ib.*; 334 ; 23 *Ib.*, 582 ; 24 *Ib.*, 17 ; 27 *Ib.*, 366 ; 28 *Ib.*, 272 ; 30 *Ib.*, 121, 904 ; 31 *Ib.*, 346 ; 51 *Ib.*, 121, 57, 145 ; 61 *Ib.*, 30.

Nor does our law differ much—not at all except in some details—from the laws of the other states, and, indeed, of most of the civilized world, including the mother country. See 2 Phillips on Ev., note 491, p. 682 *et seq.*, and cases there cited, where the whole subject is discussed, and very similar conclusions to those summarized in our Code are reached.

From this summary, which is our law by our own statute embodied in our Code, whether supported or not by other authority (though it is so supported), it would seem clear that the evidence of books is secondary, and introduced only when no other evidence can be got—*ex necessitate rei.*

Therefore, if the sale-clerks of the party who offers the books be alive and accessible, he cannot prove even an ordinary account by the books; because he has better evidence in the clerks who sold and delivered the goods. Moreover, if he had a book-keeper accessible, that book-keeper, not himself, must prove that the books are the books of original entry ; because that book-keeper is a clerk, and his absence must be accounted for, his evidence being the test of the entries which he, the clerk or book-keeper, made.

From an examination of the evidence in the record, it appears that the clerks who sold the goods were both alive and not inaccessible—at least there was no proof of death or of their being beyond seas—or otherwise out of reach of process of the court. There appear also to have been two book-keepers, one was proven to be dead, but the other was not accounted for, yet the party was permitted to prove the books to be those of original entries, contrary to the ruling in 13 *Ga.*, 508, and when he himself appears not to have made a single entry therein. The evidence of the two salesmen was the best, 18 *Ga.*, 693 ; 20 *Ga.*, 365, and in

their absence, to admit the books, all the book-keepers who made the entries should have been sworn or accounted for, before the party himself could be sworn to the books—so as to admit them. Moreover, there appears to have been admitted in evidence, as well as we can ascertain from a confused record, not only the journal, but the ledger. The latter should not have been admitted, at any rate only to show a regular system of book-keeping, but in no event to prove the account or any part of it. To prove that, the book of original entries, the entries made, as a practice, daily, are alone proof or evidence. Mere temporary memorandum books, used by the salesmen, and transferred nightly from pencil entries of theirs to the permanent ink-book of the daily sales are not the books of original entries, so as to exclude such permanent book; but the latter is the book contemplated by the statute.

2. But most assuredly these books were not proof of the legality of the transfer of the individual accounts of Bracken to the account of Bracken & Ellsworth.

The charge of the court seems so to regard them, and the judge nowhere called the attention of the jury to those items as not included in the proof which the books were competent to make, if competent at all. His entire charge is not in the record; but the extracts from it show no such exception. So in regard to cash payment of drafts, etc., which the books could not establish as due by the defendants to the plaintiffs. See 8 *Ga.*, 74; 57 *Ga.*, 145; Code, §3777.

3. To bind Ellsworth, who came into partnership after debts were due by his predecessors, Bracken, and Bracken & Haslam, for those debts so incurred by his predecessors, it was incumbent on plaintiffs to show some express agreement, or some agreement implied by his individual conduct, to assume that indebtedness. Some authority from him to transfer the old accounts or other indebtedness of the old firm, or prior parties, to the new firm of which he became a member, is essential. "A new partner is of course liable

for all the subsequent debts of the firm, in the same manner as any other partner; and it is equally obvious that he is not liable for the old debts, unless he assumes them for a consideration." Parsons on Part., 433. The author, Parsons, then goes on to discuss the consideration necessary to support the promise, and closes with this remark: "On the whole, we should say that the law of contracts and the law of partnership lead to the conclusion that the new partner is not bound to the old creditors, unless on a promise to them for a consideration; both of which might, of course, be indirect and implied by circumstances." And then the circumstances are indicated, such as paying interest on the old debt, or the knowledge without objection that the firm, of which he is a member, paid the interest. See also notes and cases cited. Parsons on Part., pp. 433-4-5-6.

On the whole, we think that the question in this case on this point was not submitted clearly and fully to the jury. It is, as appears from Parsons above cited, a question mixed of law and fact for court and jury; and we think that the court should have charged that Ellsworth could not be held liable for these debts of the old firms unless he had assumed them, and that the jury must be satisfied from the evidence that he did assume them as a member of the new firm—that he authorized the transfer, and considered the debt that of the new firm, of which he was a member—that this agreement could be established by circumstances as well as direct proof, such as payments made on the old accounts by the new firm, *with his knowledge and consent*, or other equivalent circumstances, if any, but always such as to bring home knowledge of what was being done to him.

4. Is such an agreement a promise to pay the debt of another, and within the statute of frauds? It would seem to be the debt of another. The new firm and the old firm are not the same person or being in law. The partnership is not a corporation, but it partakes somewhat of the nature of a corporation and has a sort of individuality. It is not strictly speaking a legal person, yet it has a certain degree

and measure of personality. The firm name, while suits may not be brought by or against it in that name without reference to those persons who compose it, is yet of enough personality and legal entity to render its use in pleading necessary; and, unquestionably, when one of a firm goes out and another comes in, the firm is changed—an old partnership dies and a new one is born. See Parsons on Part., pp. 267 *et seq.* Indeed, the law merchant recognizes them as *quasi* corporations. Parsons on Part., pp. 170-1 *et seq.* The promise to pay the debt of one partnership by another totally different partnership would clearly be the promise to pay the debt of a third person, and within the statute. How far the fact that the new firm is composed in part of the old, or that the new firm is grafted upon the individual stock of a private person, who is one of two members composing it, may change the rule, we do not decide. That is the case here. The firm of Bracken & Ellsworth was grafted upon what was the private business of Bracken in the matter of the milling business, and Bracken's private business, while he ran the mill, was grafted on that of Bracken & Haslam. It would seem that when Haslam went out, the first partnership died, and Bracken went on alone, until Ellsworth joined him in the business, and made an altogether new firm. Indeed, there was no partnership when he came in, but he made it by joining in with Bracken's private mill business. Even when a new man comes into an old partnership, it is a new partnership. Parsons on Part., p. 34. It would seem upon principle, therefore, that in this case it was a promise to pay the debt of another; but as the question was not argued fully before us, and as it does not appear what assets of the first firm of Bracken & Haslam, and of Bracken, their successor, went into the new firm, we leave the question open with the above remarks upon the general bearings of principle upon it.

5. It would seem dangerous in a case like this to hold the new firm bound upon slight circumstances. The accounts of Bracken were transferred—Dillon testifies—to

the new firm by his order. It is not said that Ellsworth had it done. Bracken was interested to have it done, and it is a case where Dillon should have conferred with Ellsworth to see that all was right. But both Bracken and Ellsworth deny it. The former, that he ordered it done or was authorized to do so; the latter, that he ever authorized it or ever agreed in any way to assume the debts. If Bracken had agreed with Dillon, and if parol evidence would bind Ellsworth, then the door would be wide open to fraud, unless from the circumstances Dillon ought to have suspected something was wrong, and to have got Ellsworth's sanction as the only party interested against the transaction. See, as bearing generally on this subject, Code, §§1911, 1912, 1913, 1917; 19 *Ga.*, 335; 31 *Ib.*, 688; 26 *Ib.*, 568; 36 *Ib.*, 108; 15 *Ib.*, 137, 252, 351; 21 *Ib.*, 238; 2 *Kelly*, 29.

6. The set-off should have been pleaded specifically, and itemized, to have authorized a recovery for over-payments by the defendants, if the plaintiffs' claim had been over-paid. When pleaded, it may be recovered. 57 *Ga.*, 145.

7. The court may open the case and let in new testimony before the argument is closed, when justice requires that it be done. The matter is much in the discretion of the presiding judge, and unless in some flagrant abuse of discretion, or clear injustice to one or the other side, this court will not control that discretion.

On the whole we are quite clear that the case should be tried over, and that the court erred in not granting the new trial. Therefore the judgment is reversed.

Judgment reversed.