MORRIS *vs.* MARQUEZE & VARNEY; MORRIS *vs.* SAHLEIN & COMPANY.

1. H. & S. being partners, S. sold and assigned his interest to M. The contract recited that M. agreed to assume with H. the debts of the firm of H. & S., and to protect S. from all responsibility therefor. This agreement was signed by H., who was no party to it, and by M., but not by S. H. gave a note signed in the firm name of H. & M. for a debt which had been due by H. & S.:

*Held,* that in a suit thereon against H. & M., the agreement was admissible in evidence as a part of the transaction between the parties.

(*a.*) In order to render an incoming partner liable for the debts due on account of the business to which he succeeded with his co-partner, some agreement must be shown upon the part of the incoming partner, founded upon a sufficient consideration, to assume such liabilities and pay such debts before he can be bound through the new firm to pay the old indebtedness.

(*b.*) The jury might have inferred that the plaintiffs' agent had notice of all that occurred in the formation of the new partnership.

2. Evidence tending to show that the new partner was grossly defrauded in assuming the liabilities of the old firm threw light on the conduct of the parties, and was admissible.

3. The jury should not have been instructed that the effect of the agreement between H. & M. was an assumption of the debts of H. & S. by H. & M. They should have been instructed to consider it as evidence to show an agreement by M. to assume the debts in connection with H. and to indemnify S. against their payment; but they should also have been instructed that it would not have that effect if the attendant circumstances were such as to show that it was founded upon none but a fraudulent consideration; that if M. derived no benefit from it, and the facts were such as to convey notice of the fraud to plaintiffs or their agent, then M. would not be bound to the plaintiffs for the debt due them by H. & S.

4. Nor was it right to charge unqualifiedly that the giving of the new note by H. in the name of H. & M. for the debt of H. & S., under this agreement, was a transaction within the scope of the partnership business of H. & M. Such a charge withheld from the jury the consideration of the defence, and was fragmentary and one-sided.

(*a.*) It was error to charge that, if the plaintiffs abandoned the legal steps they intended to take against H. & S. in consequence of the delivery of their goods to H. & M. and the giving of the note in the name of that firm by H., in order to prevent this resort to law, that would be within the scope of the partnership business,

and would bind M. This charge should have been qualified by a reference to the facts on which the defence rested.

5. The case of Morris *vs.* Sahlein & Company falls within the principles set forth in Morris *vs.* Marqueze & Varney, above determined, and is controlled by it in all its essential features

January 21, 1885

Partnership Evidence. Fraud. Statute of Frauds. Notice. Charge of Court. Before J. T. PENDLETON, Esq., Judge *pro hac vice* Fulton Superior Court. March Term, 1884.

Reported in the decision.

T. P. WESTMORELAND, for plaintiff in error.

H. H. COLQUITT; JACKSON & KING, for defendants.

HALL, Justice.

Hook & Smith, a firm doing business in Atlanta, became indebted to plaintiffs, who were merchants in Boston, for goods which the plaintiffs had furnished them previous to the fall of 1881. In the latter part of October of that year, their agent became uneasy about their claim, and called several times at the store of Hook & Smith to see after it, and also consulted an attorney in relation to its collection. Hook assured this agent, Grasty, that it was all right; that his firm was worth $10,000.00 or $12,000.00 above its liabilities, and he was going to get in a rich partner; but this did not satisfy the agent, who saw Hook again between the 1st and 5th of November, and urged him to pay the claim. Four-fifths of he stock of goods then in the store had been purchased from plaintiffs, who had written to their agent, if he thought the defendants unsafe, to stop the goods in *transitu* and this agent had determined to take steps in the matter unless Hook satisfied him. On this visit, he exhibited to the agent an agreement purporting to have been executed between Smith and the defendant, Morris,

on the first day of November, 1881, whereby it was witnessed that Smith had that day sold and conveyed to Morris his entire interest in the assets of Hook & Smith, consisting of their stock, all their notes, and other property, for the consideration of $3,000, one thousand dollars of which was paid in cash, and one thousand dollars was to be paid on the first of the following December, and the remaining thousand dollars on January 1st, 1882    Morris, in consideration of the assets conveyed to him, agreed to assume, with Hook, the debts of the firm of Hook & Smith, and to protect Smith from all responsibility for the same.    This agreement was signed by Hook, who was no party to it, and by Morris, but was never signed by Smith, who was the other party.    Grasty, the agent, was so well satisfied with it that, without ever having seen Morris, and without looking further into the matter, he took the note signed by Hook, with the name of Hook & Morris, in settlement of the plaintiffs' claim against Hook & Smith   This note, which is the foundation of the plaintiffs' suit, was dated on the 8th day of October, 1881, nearly one month previous to the agreement alleged to have been entered into between the defendant, Morris, and Smith.    To explain this glaring discrepancy, Grasty swore that the note was given early in November, he thinks before the 5th of the month, and that the date was fixed to make it correspond with the average date of the shipments of goods which the plaintiffs had made to Hook & Smith, which shipments had commenced in September previous; that this mode of dating papers was in accordance with the custom of plaintiffs' house.    He shortly thereafter placed the note, together with the invoice of the goods for which it was given, in the hands of an attorney for collection.    It does not appear that the old firm of Hook & Smith was released from liability for this debt by the execution of this note. Hook made no defence to the suit, but Morris set up a defence, wherein he alleged that, at the date of the note, there was no such partnership as Hook & Morris; and that he

was not then in any way a partner of Hook; that the note was executed by Hook in the name of Hook & Morris in settlement of a debt due to plaintiffs from Hook & Smith, and upon no other consideration; that the settlement was a matter outside the partnership agreement of Hook & Morris, and that Hook, in executing the note, acted without the knowledge or consent or authority of him, Morris.

When the agreement purporting to have been made between Smith and defendant, Morris, was offered in evidence, it was objected to by Morris's counsel, because it was incomplete and irrelevant. This objection was overruled, and the paper was admitted in evidence.

The defendant gave in evidence the articles of partnership between himself and Hook, bearing date 1st day of November, 1881, which were signed by both of them and attested by Smith. The only one of these articles which has a material bearing upon the issues made by the pleadings is the 4th, which is as follows:

"Neither of the parties shall subscribe any bond, sign any note of hand, draft or bill of exchange, or assume any other liability, verbal or written, either in his own name or the name of the firm, without the consent of the other party."

Morris testified that the note in suit was made without his consent, direction or knowledge; that he knew nothing about it; that he paid the $1,000, mentioned in the agreement between him and Smith, either to Smith personally, or into the store of Hook & Smith for him; that he also gave the notes for the balance of the consideration mentioned in the agreement with Smith; and that he then intended going into the mercantile business with Hook. He then proposed to prove by himself and other witnesses and instruments of evidence that the agreement was procured from him by the fraud of Hook & Smith; that the fraud consisted in the false representations made to him by both Hook & Smith, that their stock in Atlanta was worth from $23,000 to $25,000; that they had a stock at Alpharetta worth $2,000, and another at Mazeppa worth $1,000;

that their indebtedness as a firm did not exceed $10,000;
that they had no debt falling due under sixty-days, and
that they were perfectly. solvent; that defendant, Morris,
made the agreement upon the fact of these representations,
believing them to be true, when in fact they were false;
that Hook & Smith were at that time hopelessly insolvent;
that they owned no goods either at Alpharetta or Mazeppa;
that on the day the agreement was signed, and before it
was signed, they executed mortgages on the stock in At-
lanta to the amount of between $7,000 and $8,000, and in
a very short time afterwards, their store was closed by their
creditors and their assets placed in the hands of a receiver.
Under the charge of the court, the jury returned a verdict
against Hook and the other defendant, Morris; for the
full amount of the note sued.    Defendant moved for a new
trial, which was refused, and he excepted.

(1.) The first ground of the motion complained of the
admission in evidence of the agreement between Smith
and defendant, Morris, over the objections of the latter.

(2.) The second ground alleges error in the rejection of
the above recited evidence.    The other grounds are as fol-
lows:

(3.) Because the court charged the jury that " the effect
of the agreement in evidence between Hook & Morris
was an assumption of the debts of Hook & Smith by Hook
& Morris."

(4.) Because the court charged the jury that " if the
plaintiffs' agent held for collection a claim in their favor
against Hook & Smith, and he went to Hook about it, and
he exhibited to such agent the agreement above referred to
between Hook & Morris, and then gave him the note of
Hook & Morris for such claim, this transaction would
be within the scope of the partnership business of Hook
& Morris."

(5.) Because the court charged the jury that " if plain-
tiffs sold to Hook & Smith certain goods, and those goods
were turned over to Hook & Morris by Hook & Smith,

and Hook & Smith made false representations to plaintiffs to obtain the goods, and plaintiffs were intending to take legal steps to recover the possession of said goods, and the defendant, Hook, in order to prevent this and retain the goods, gave plaintiffs the note sued on, that would be within the scope of the partnership business and would bind Morris."

(6.) Because the verdict was contrary to the law and evidence.

1. Notwithstanding the agreement between Smith & Morris, which was admitted in evidence over defendant's objection, was inchoate for the want of Smith's signature, yet we think it was pertinent to the issues made in the case, and should not have been rejected.    It was a part, and a very material part, of the entire transaction then under investigation.    It was at the very foundation of the agreement, which was invoked to fix liability upon the defendant, Morris, for the debts of Hook & Smith.    But while it was a part, it was not the whole of this agreement. It was so intimately connected with the articles of partnership entered into between Morris & Hook as to be inseparable therefrom.    In order to render an incoming partner liable for the debts due on account of the business to which he succeeds with his co-partner, some agreement must be shown upon the part of the incoming partner, founded upon a sufficient consideration, to assume such liabilities and pay such debts, before he can be bound, through the new firm, to pay the old indebtedness.    *Bracken & Ellsworth vs. Dillon & Sons*, 64 *Ga.*, 243, 250, 251. The very issue made here was that the agreement by which Morris was inveigled into the co-partnership with Hook was fraudulent; that the consideration for that agreement was fictitious and fraudulent; that the note sued on was founded upon this fraudulent agreement, and was itself fraudulently procured through the agency of Hook, in violation of the articles of partnership to be entered into between Hook & Morris.    We are constrained to say

that there are facts in this case from which the jury might have inferred that the plaintiffs' agent had notice of all that occurred in the formation of this new partnership, and perhaps they might have gone so far as to find that, if he did not actually participate in the scheme, he encouraged it with a view of ultimately securing the debt he held against Hook & Smith. He knew the embarrassed condition of this firm, was informed of Hook's purpose to get in a rich partner, and visited him frequently while the arrangement was being made with Morris; he was satisfied upon seeing the incomplete agreement between Smith & Morris, but would have it inferred that he knew nothing of the terms of the partnership between Hook & Morris; he testifies cautiously upon this subject, " I did not see the articles of partnership," not that he made inquiry as to the stipulations contained therein, and was misled as to their purport; he did not even see Morris, but was content to take from Hook the note of Hook & Morris, which he hastened to place, when secured, in the hands of an attorney for collection, and at the same time left with him, likewise for collection, the invoice of the goods sold to Hook & Smith, for which the note was given.

2. We are of opinion that this part of the case was not submitted fairly to the jury; the testimony rejected should have been admitted; it certainly showed that Morris was grossly defrauded, and threw light upon the conduct of the principal parties engaged in the transaction, as also upon the conduct of those who, it is insisted, encouraged and counselled, if they did not aid and abet, those who ostensibly conducted and consummated it.

3. The jury should not have been instructed that the " effect " of the agreement between Hook & Morris was an assumption of the debts of Hook & Smith by Hook & Morris. The agreement referred to was not between Hook and Morris. Although signed by these parties, it purported on its face to be, and, from the purpose it sought to accomplish, was in fact an agreement between Smith and Morris.

Hook could not convey to Morris Smith's interest in the firm of Hook & Smith. It was, at best, but evidence of Morris's agreement to assume these debts in connection with Hook, and to indemnify Smith against their payment. The jury should have been instructed to consider it as evidence to that extent, but should also have been directed, that it would not have that effect if the attendant circumstances were such as to show that it was founded upon none but a fraudulent consideration; that if Morris derived no benefit from it, and the facts were such as to carry notice of the fraud to plaintiffs or their agent, then Morris was not bound to the plaintiffs for the debts due to them by Hook & Smith.

4. Nor can we agree to the unqualified charge, that the giving of this note by Hook, in the name of Hook & Morris, for the debts of Hook & Smith, under this agreement, was, to adopt the language of the judge, "a transaction within the scope of the partnership business of Hook & Morris." This charge, as did that succeeding it, withheld from the jury the consideration of the defence; it was fragmentary and one-sided. Under the testimony in the case, the delivery of the stock of Hook & Smith to Morris, if effected at all, was at most but a constructive, and not an actual delivery. Morris never exercised dominion over it; he seems to have had no undisputed right to do so, in the absence of Smith's signature to the agreement between them. It was error, therefore, to charge that, if the plaintiffs abandoned the legal steps they intended to take against Hook & Smith, in consequence of this delivery of their goods by this firm to Hook & Morris, and the giving of the note sued on by Hook, in order to prevent this resort to law, that "would be within the scope of the partnership business and would bind Morris." This charge should have been qualified by a reference to the facts on which Morris relied for his defence. It was the province of the jury to pass upon these; they have not been permitted to do so; had this been done, the result might have been different.

As the case goes back for another hearing, we forbear to express any opinion as to what the finding should have been, under the evidence which was before the jury and that which the defendant should have been allowed to introduce.

5. The case of *Morris vs. Sahlein & Co.* falls within the principles set forth in *Morris vs. Marqueze & Varney*, this day determined, and is controlled by it in all its essential features.

Judgment reversed.