## REYNOLDS *et al. v.* HINDMAN.

1. A landlord who rents to an individual and stipulates to furnish him board, but afterwards accepts a partnership, of which the first tenant is a member, as tenant in lieu of the original tenancy, has no lien upon the crop made by the partnership for the board of the original tenant, the partnership having made no stipulation as to such board, and the new partner not knowing of any contract relating thereto.
2. Where counsel for the parties agree in open court upon the amount of the attorneys' fees for bringing the money into court, the implication is, in the absence of something expressly to the contrary, that they consent to the payment of such fees out of the fund.
3. Where a receiver is in possession of a crop and has a force hired to gather it, the landlord does not become liable for increased expenses resulting from discharging the hands by telling the receiver he did not want them on his place and that they should not use water out of his spring.
4. It was error for the judge to dictate to the jury how the fund in controversy should be divided in case they found in favor of the plaintiff.

December 7, 1891.

Landlord's lien. Partnership. Attorneys' fees. Receiver's possession. Charge of court. Before Judge RICHARD H. CLARK. Douglas superior court. January term, 1891.

Reported in the decision.

J. S. JAMES, for plaintiffs in error.

J. V. EDGE, *contra.*

SIMMONS, Justice.

Hindman brought his petition for injunction and re-

ceiver against E. A. Reynolds, alleging, in substance, that the latter was his partner in the making of a crop, which was then maturing, and in the cultivation of which certain debts had been incurred for which the petitioner and defendant were jointly liable; and that the defendant, together with his father, A. Reynolds, from whom the land was rented, had confederated to drive the petitioner from the premises and get his property, and had resorted to acts of violence and threats of bodily harm against the petitioner, so that he could not remain on the place to gather the crop; that he had tried to effect a settlement with the defendant, and had proposed that the defendant price the crop and let petitioner buy or sell, or that they agree upon some other settlement, or refer the matter to arbitrators who should make a settlement to be abided by the parties, but that defendant refused and would agree to nothing less than that petitioner should give up to him the crop, mule and all, and leave without anything, thus showing his (defendant's) determination to swindle petitioner. It was further alleged that the defendant was insolvent. The prayer was, that a receiver take charge of and gather the crop, sell it and pay the debts of the firm; and that the remainder of the money, after paying expenses of this litigation, be divided between the parties. A receiver was appointed, who gathered and sold the crop, realizing therefrom a fund of $231.34, after paying expenses of gathering and the rent. Afterwards, A. Reynolds, the landlord, upon his petition, became a party as a creditor claiming a lien upon the crops and the fund in the receiver's hands, for supplies furnished in the making of the crop, the amount claimed being $94.63. Upon the trial of the case, the jury found that out of the fund in the hands of the receiver the costs of the proceeding be paid, that certain amounts be paid the receiver and the petitioner's attorneys, and that the bal-

ance be shared between certain creditors, among them A. Reynolds whose claim they fixed at $11.64. He and the defendant, E. A. Reynolds, moved for a new trial, which was refused, and they excepted.

1. A part of A. Reynolds' claim was an item of $64 for the board of E. A. Reynolds for eight months. It appeared from the evidence that in January, 1890, A. Reynolds rented the land to E. A. for one third of the corn and one fourth of the cotton to be raised. There was also evidence that A. Reynolds agreed to furnish E. A. with board at $8 per month. Afterwards, and before work on the crop was commenced, an agreement was entered into between A. Reynolds and E. A. Reynolds and Hindman, under which both the latter were substituted as tenants in lieu of E. A., and were to cultivate the land together, each bearing half the expense. As to Hindman's knowledge of the arrangement between A. Reynolds and E. A. in regard to board, the testimony was conflicting. Hindman claimed that he was not apprised of any such arrangement, and was not a party to any stipulation as to the board of E. A., but that on the contrary, he was informed by A. Reynolds, both before and after the new tenancy began, that he had never charged any of his children for board. Upon this branch of the case the court charged the jury, in substance, as follows: that if they believed from the evidence that E. A. Reynolds contracted with his father to pay him board, when he himself first rented the land, and that the contract of partnership with Hindman was after this, and that the latter had no notice of such understanding between young Reynolds and his father as to board, the sum claimed by A. Reynolds for board would not be a lien upon the partnership effects, though he might have a lien upon the share of E. A. Reynolds after the division. Error is assigned, on the ground that A. Reynolds did have a lien for the board on the

portion of the crop belonging to E. A. Reynolds, and on the fund in the hands of the receiver going to him, which lien was superior to the debts of other parties claiming liens as creditors of the partnership.

We see no error in the charge on this ground. The claim asserted by A. Reynolds was to a landlord's lien for supplies furnished for the cultivation of the crop. To constitute such a lien, the supplies must have been furnished to or at the instance of the tenant who made the crop. Code, §1978. That tenant was the partnership. The board for which a lien was claimed was furnished to E. A. Reynolds individually, under an agreement entered into between the landlord and himself before the tenancy of the partnership began; and unless the latter assumed or ratified it, that agreement did not become an obligation of the partnership or give rise to a lien upon the crop cultivated by the partnership. When the original tenancy ceased, and the landlord, before the cultivation of the crop was begun, accepted the partnership as tenant in lieu of E. A. Reynolds, his rights under any antecedent agreement he may have had with E. A., though they may have continued as against E. A. individually, were no longer the rights of a landlord against a tenant, and were not enforceable against the crop, unless the partnership adopted the obligation as its own. The mere fact that E. A. Reynolds was a member of the partnership did not bind it. It is a well settled rule that an obligation contracted by a member of a firm before the formation of the partnership, though in the business to which the firm has succeeded, does not bind his associates in the absence of knowledge or ratification on their part. *Bracken & Ellsworth* v. *Dillon & Sons*, 64 *Ga.* 243; *Morris* v. *Marqueze & Varney*, 74 *Ga.* 86; 1 Addison, Contracts, §109. If the claim was not a partnership debt, the partnership assets or any part of them could not be subjected to its

payment until the partnership debts were first paid. Code, §§1918, 3154; *Keese* v. *Coleman & Co.*, 72 *Ga.* 658, and cases cited.

2. It was also alleged as error that the court instructed the jury to allow the plaintiff's attorney $45 as fees for bringing and prosecuting the suit, to be paid out of the partnership fund, "together with the $40 due the receiver, next after paying the cost." This amount was accordingly allowed in the verdict. It was insisted that this instruction was erroneous because the fund going to the defendants could not be applied to the payment of attorney's fees of the plaintiff, so far as the amount going to E. A. Reynolds was concerned, and so as to divest the lien of Alfred Reynolds. The judge certifies, in connection with this ground, that the counsel for A. Reynolds agreed that the lawyers' fees should be $45, and the receiver's $40; and that the net balance in the receiver's hands was $231.34. We think where counsel for the parties agree in open court upon the amount of attorney's fees for bringing the money into court, the implication is, in the absence of something expressly to the contrary, that they consent to the payment of such fees out of the fund.

3. It is complained of as error that the court charged the jury as follows: that if they believed from the evidence that Reynolds told the receiver he did not want the Hindmans on his place and they should not use water at the spring, and that if Reynolds' directions were carried out they could not pick the cotton, and the receiver reasonably feared there might be a personal difficulty, the jury might deduct as much from Reynolds' account against Hindman as the receiver had to pay extra for picking the cotton, if they believed he had to pay additional sums for gathering the crop. It seems that the jury did make a deduction in accordance with this instruction. In the form of verdict they were di-

rected to use in case they found for the plaintiff, the amounts to be allowed on the different claims were set out by the court, the aggregate upon Reynolds' claims being $23.64, and $12 being fixed as the amount to be taken therefrom "for not letting them pick cotton," if the jury should allow a deduction for that reason. The sum found by the jury in favor of A. Reynolds was the difference between these two amounts, $11.64. The testimony upon which this portion of the charge was based was substantially as follows: E. A. Hindman and W. W. Hindman were employed by the receiver to pick the cotton on the rented premises, and were to be paid at the rate of fifty cents per hundred; but after they had so worked for a few days, A. Reynolds went to the receiver and told him that he did not want the Hindmans on his place, that he thought the receiver could get other people to pick the cotton, that they could go, and that he did not want them to use water out of the spring; whereupon the receiver told E. A. Hindman that he thought it best for the Hindmans to go away, that there was some danger of having a difficulty with Reynolds; and they did go away. The receiver testified that he advised them to go away because he feared Reynolds would give them trouble; and that after they left he had to pay sixty cents per hundred for picking cotton.

We think it was error to instruct the jury that they might deduct from the claim of the landlord additional expenses in the gathering of the crop which his language or conduct may have led the receiver to incur. There was no evidence from which the jury could find that such additional expense was a necessary or reasonable result of anything that the landlord said or did. The crop was under the control of the court, and in the possession of the receiver who was authorized to gather it and to employ such hands as were needed for the purpose. He was not subject to the direction of the land-

lord, and any wrongful interference by the latter would have rendered him amenable to the process of the court. Certainly the mere statement of the landlord to the receiver that he did not want certain employees of the receiver to remain on the place or use the spring, did not necessitate the substitution of other employees in their stead, and could not establish a liability on the part of the landlord for any additional expense which may have resulted from such substitution. There is no evidence that he made any threats or did anything that rendered it unsafe for the Hindmans to remain on the place; and for aught that appears they would have remained at work if the receiver had not suggested their going. There was no ground, therefore, upon which damages could be allowed against the landlord "for not letting them pick cotton."

4. Another ground of exception was that the court submitted to the jury in writing a form for their verdict in case they should find for the plaintiff, and instructed them to direct the payment of the fund in the hands of the receiver as set out in such verdict, the same being as follows:

" We, the jury, find net balance in the hands of the receiver the sum of $231.34, which is to be distributed among the following named creditors, as their liens or priorities may appear, and costs of suit:

| | | |
|---|---:|---:|
| Balance in hands of receiver | $231 | 34 |
| Costs of court to be ascertained | | |
| Receiver's fee | 40 | 00 |
| Counsel fees | 45 | 00 |
| McLarty's debts | 85 | 00 |
| Guano debt | 54 | 15 |
| Tom Reynolds (corn note) | 41 | 25 |
| Blacksmith account | 3 | 25 |
| E. (?) A. Reynolds's account *vs.* Hindman | 19 | 14 |
| A. Reynolds *vs.* E. A. Reynolds | 4 | 50 |

"Deduction for not letting them pick cotton, $12.00; if allowed, to be taken from the $19.14 and $4.50, making in all $23.14."

The verdict found by the jury, except as to the item of $3.25 "blacksmith account," was substantially the same as that submitted by the court. We think it was error for the judge to dictate to the jury in this manner as to the division of the fund in controversy.

*Judgment reversed.*